IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                          )
IN RE: AIR CRASH INTO THE )
JAVA SEA ON JANUARY 9, 2021 )  MDL No. 1:23-md-3072
                          )
                          )
```

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Illinois Plaintiffs' Motion to Remand.

These lawsuits arise from the 2021 crash of Sriwijaya Air flight SJY182 into the Java Sea off the coast of Indonesia. Sriwijaya Air is an Indonesian air carrier. The flight was a commercial, intraIndonesia flight that departed from Jakarta and was bound for Pontianak. Jakarta is located on the Indonesian island of Java, while Pontianak is across the Java Sea on the island of Borneo. There is no bridge connecting Java to Borneo, so the only way to travel between the two islands is either by boat or airplane. The aircraft crashed into the water several miles off the coast of Java. The 62 people on board, all citizens of Indonesia, died in the crash.

Plaintiffs, as heirs and beneficiaries, bring wrongful death claims on their own behalf and survival actions on behalf of the estates of their decedents alleging strict liability and negligence. They sued Boeing in August 2022 in the Circuit Court

1

for Cook County. Before Boeing was served with the complaints, it removed the cases to the Northern District of Illinois. On October 7, 2022, Plaintiffs moved to remand.

The JPML then transferred these cases to this Court for centralized pretrial proceedings along with 17 other actions arising from the crash of Sriwijaya Air flight SJY182.

Plaintiffs do not dispute that the parties are diverse and that the amount in controversy exceeds $75,000. Boeing is a citizen of Virginia (where it is headquartered and has its principal place of business) and Delaware (where it is incorporated). Plaintiffs and decedents are all citizens and residents of Indonesia. There is complete diversity.

The only argument Plaintiffs advance against diversity jurisdiction is that Boeing failed to prove that its headquarters and principal place of business was in Arlington, Virginia. Plaintiffs say that Boeing only cited its Form 10-Q Quarterly Report in its removal notices and, thus, did not satisfy its burden of persuasion that its principal place of business was in the State of Virginia.

That argument is foreclosed by Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81 (2014). Dart construed the "short and plain statement" language of § 1446(a) and concluded that it incorporated the same "short and plain statement" rule that applies to complaints under Federal Rule of Civil Procedure

2

8(a). Boeing had no obligation to submit evidence or prove diversity jurisdiction with the notice of removal. Evidence is only required when a plaintiff (or the court) contests a defendant's allegations.

Boeing's notices of removal state that Boeing is a Delaware corporation that has its headquarters and principal place of business in Arlington, Virginia. That more than suffices under Dart Cherokee, and since Plaintiffs do not actually dispute the existence of diverse citizenship, nothing more is required.

Plaintiffs in their supplemental memorandum argue that the non-jurisdictional "forum defendant" limitation on removing diversity cases (28 U.S.C. § 1441(b)(2)) requires remand.

The "forum defendant" rule of 1441(b)(2) is a non-jurisdictional limitation on removal, and a plaintiff has only 30 days from the notice of removal to raise non-jurisdictional limitations on removal. Under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." Because Plaintiffs did not raise the argument within 30 days of Boeing's filing of its notices of removal, the argument is waived.

The forum defendant rule is non-jurisdictional. Although the Fourth Circuit has apparently not addressed this question

3

specifically, it has held that "the statutory requirements for removal provided in 28 U.S.C. §§ 1441-1453"—which includes the forum defendant rule—are the "defect[s] other than lack of subject matter jurisdiction." In re Norfolk S. Ry. Co., 756 F.3d 282, 292 (4th Cir. 2014).

Under 28 U.S.C. § 1447(c), Plaintiffs had 30 days from the notice of removal to raise the forum defendant rule. The forum defendant rule only applies when a defendant has been properly served: "A civil action otherwise removable solely on the basis of … [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Here, Boeing was not served before these cases were removed.

Three circuits have squarely held that § 1441(b)(2) does not apply when removal occurs before proper service. See Texas Brine Co. v. Am. Arb. Ass'n, 955 F.3d 482, 485-87 (5th Cir. 2020); Gibbons v. Bristol-Meyers Squibb Co., 919 F.3d 699, 704-07 (2d Cir. 2019); Encompass Ins. Co. v. Stone Mansion Rest. Inc., 902 F.3d 147, 151-54 (3d Cir. 2018). No circuit has held otherwise.

Further, the forum defendant rule cannot apply because, at the relevant times, Boeing was not a citizen of Illinois. In May 2022, before these cases were filed and removed, Boeing

4

announced the move of its corporate headquarters from Chicago, Illinois to Arlington, Virginia. And as the evidence shows, contrary to Plaintiffs' allegations, Boeing's principal place of business was not in Illinois, but rather Virginia, at the time of filing and removal.

Citizenship is assessed at the time the action is commenced. Rowland v. Patterson, 882 F.2d 97, 99 (4th Cir. 1989). In a removed case, this means courts look to whether diversity "existed both at the time the action was originally commenced in state court and at the time of filing the petition for removal." Rowland, 882 F.2d at 99; see also Richard v. Tallant, No. 20-1752, 2022 WL 2526680, at *2 n.* (4th Cir. July 7, 2022) (unpublished); Sayers v. Sears, Roebuck & Co., 732 F. Supp. 654, 656 (W.D. Va. 1990). Corporations are citizens of the states where they are incorporated and where they have their principal place of business. 28 U.S.C. § 1332(c)(1). Boeing unquestionably is incorporated in Delaware. The only dispute is the location of Boeing's principal place of business.

For purposes of diversity jurisdiction, a corporation's principal place of business is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," which is "often metaphorically called … the corporation's 'nerve center.'" Hertz Corp. v. Friend, 559 U.S. 77, 80–81 (2010) (internal citation

omitted); see also Hoschar v. Appalachian Power Co., 739 F.3d 163, 170-74 (4th Cir. 2014). As Plaintiffs concede, this is true even if some of the officers are not located at that particular location. This test is intended to be straightforward, simple, and predictable, which is valuable both to corporations making business and investment decisions and to plaintiffs deciding whether to file suit in a state or federal court. Hertz, 559 U.S. at 94-95. Applying the test here, it is clear that Boeing's principal place of business at the time of filing and removal was Arlington, Virginia.

First, that is where Boeing's headquarters was located, as reflected in Boeing's contemporaneous public and corporate records. Declaration of Koji Torihara in Support of The Boeing Company's Oppositions to Plaintiffs' Motions to Remand. Boeing's filings with the SEC also identify Arlington, Virginia as the company's principal offices, and its corporate bylaws identify the Arlington headquarters as the location of the "Corporation's executive offices" and direct that all notices from shareholders to the company be sent there. As the Supreme Court held in Hertz, the "'nerve center' will typically be found at a corporation's headquarters." 559 U.S. at 81.

Second, Arlington, Virginia is where Boeing's high-level officers actually directed, controlled, and coordinated Boeing's activities at the relevant time. All communications with and

activities of Boeing's Board of Directors are coordinated by
Boeing's Office of the Corporate Secretary in Arlington.
Boeing's Board met in Arlington in October 2022, while it has
not met in Illinois since 2019. Boeing's Executive Council, a
group of high-ranking Boeing executives, met in Arlington in
November 2022; it has not met in Illinois since 2020. And
Boeing's Chief Executive Officer and Chief Financial Officer
have been in Arlington for all of Boeing's quarterly earnings
conferences since May 2022. Boeing's leadership with enterprise-
wide authority also is and was at the time of filing and removal
primarily based at Boeing's headquarters in Arlington.

As the Supreme Court recognized in Hertz, "in this era of
telecommuting, some corporations may divide their command and
coordinating functions among officers who work at several
different locations." 559 U.S. at 95-96. That is true for
Boeing, especially during and after the COVID-19 pandemic.
Nonetheless, the single location with the most officers with
responsibility for Boeing's oversight and strategic decision-
making at the time this case was filed and removed was
Arlington, Virginia. The primary office of Boeing's President
and Chief Executive Officer (CEO), David Calhoun, was in
Arlington at the relevant times. Mr. Calhoun maintains his
primary office in Arlington even though his primary residence is
in New Hampshire and he works in multiple locations. From

Arlington, Mr. Calhoun oversees the company's three business units: Boeing Commercial Airplanes; Boeing Defense, Space & Security; and Boeing Global Services. The leaders of each of these business units report to, are accountable to, and are directed by him.

Arlington is also where five other corporate leaders with enterprise-wide responsibilities were based at the time these cases were filed and removed. This includes Boeing's Chief Communications Officer, Corporate Secretary, Chief Strategy Officer, Chief Sustainability Officer, and Executive Vice President of Government Operations. Boeing's Chief Financial Officer also regularly traveled to Arlington for work even though his primary residence was in Connecticut. These are the kinds of top officers that are relevant to the nerve center test.

By comparison with these seven senior officials, only six members of Boeing's Executive Council with enterprise-wide responsibilities during the time these suits were filed and removed were not based in Arlington, Virginia. Four members were based in Washington state, Florida, and Ontario. And only two—the former Treasurer and former Chief Compliance Officer—had offices in Chicago, Illinois.

Travel records further reinforce that Boeing's nerve center was in Arlington, Virginia, not Illinois. In all, those members

of the Executive Council with enterprise-wide responsibilities whose primary residences were in neither Illinois or Virginia, including Mr. Calhoun and Mr. West, made a total of 16 business trips to Illinois and 48 business trips to Virginia.

Removal was also independently proper based on admiralty jurisdiction. Admiralty jurisdiction exists if (1) the alleged tort occurred on navigable water (the locality test) and (2) the activity in question bears a substantial relationship to traditional maritime activity (the connection test). Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995); 28 U.S.C. § 1333(1). This accident, in which the airplane crashed into the ocean several miles off the coast, satisfies both tests.

The locality test is satisfied if the tort occurred on navigable water. Grubart, 513 U.S. at 534. These four cases meet the test for two independent reasons: (1) the injuries occurred with the crash into the Java Sea, and (2) part of the alleged wrong occurred over navigable waters. Crash on navigable waters. Plaintiffs' injuries occurred, and the alleged tort was completed, when the aircraft crashed into navigable waters. It is irrelevant that some tortious conduct may have occurred on land, as Plaintiffs allege. See, e.g., Taghadomi v. United States, 401 F.3d 1080, 1084 (9th Cir. 2005) (admiralty jurisdiction extends over claims arising from Coast Guard's

9

activity on land when injury occurred on water); <u>Miller v.</u>
<u>United States</u>, 725 F.2d 1311, 1315 (11th Cir. 1984) (admiralty
jurisdiction exists when an airplane crashed into waters more
than one marine league from the shores of the United States even
though the alleged negligence occurred on land); <u>Williams v.</u>
<u>United States</u>, 711 F.2d 893, 896 (9th Cir. 1983) (admiralty
jurisdiction exists over claim that FAA's negligence on land
caused accident in Pacific Ocean).

Alleged wrong on navigable waters. The locality test is
also met here because the alleged wrong occurred, at least in
part, over navigable waters. <u>See, e.g., Lu Junhong</u>, 792 F.3d at
814-16 (admiralty jurisdiction proper because plaintiffs alleged
autothrottle problems that occurred over San Francisco Bay). The
locality test can be met if either the tortious conduct begins
on land but culminates with an injury on navigable waters or the
tortious conduct begins on a vessel on navigable waters but
culminates with an injury on the land. Here, key events in the
chain of causation occurred while the aircraft was over
navigable water, and therefore the wrongful conduct, if any,
occurred at least in part over navigable water.

Plaintiffs attempt to narrowly frame the wrongful conduct
as stemming from the design, manufacture, and sale of the
aircraft's autothrottle and accompanying manuals on land. But
courts have repeatedly recognized that product liability claims

based on the onshore design and manufacture of products that cause injury on or over navigable water fall within admiralty jurisdiction. See, e.g., Saratoga Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875 (1997); Stark v. Armstrong World Indus., 21 F. App'x 371 (6th Cir. 2001); Pavlides v. Galveston Yacht Basin, Inc., 727 F.2d 330 (5th Cir. 1984); Lewis v. Timco, Inc., 716 F.2d 1425, 1426 (5th Cir. 1983); Pan Alaska Fisheries, Inc. v. Martine Constr. & Design Co., 565 F.2d 1129 (9th Cir. 1977).

Plaintiffs also assert that an autothrottle failure first occurred while the aircraft was over land. But Plaintiffs also allege that it persisted over water and caused the accident. That suffices for admiralty jurisdiction

The locality test is therefore independently satisfied because the alleged wrong occurred at least in part over navigable water.

The connection test has two components: (1) whether the incident giving rise to the suit had a "potentially disruptive impact on maritime commerce," and (2) whether "'the general character' of the 'activity giving rise to the incident'" has a "substantial relationship to traditional maritime activity." Grubart, 513 U.S. at 534 (quoting Sisson v. Ruby, 497 U.S. 358, 364–65, 364 n.2 (1990)). Both elements are satisfied in these cases.

Disruptive impact. Even a possibility that an incident could injure a crewmember or passenger is a potentially disruptive impact on maritime commerce sufficient to satisfy the first component of the test. This case involves the death of all passengers and crew on a commercial flight between islands.

Substantial relationship. Plaintiffs argue instead that Sriwijaya flight SJY182 did not bear a significant relationship to traditional maritime activity. The Supreme Court made clear that flights bear a significant relationship to traditional maritime activity if, prior to the advent of air travel, the activity would have been performed by boat. Offshore Logistics, 477 U.S. at 218-19. Offshore Logistics arose from a helicopter flight ferrying workers from an oil rig to the shore, a flight that the Supreme Court found bore a substantial relationship to traditional maritime activity.

Here, flight SJY182 was ferrying passengers and cargo from one Indonesian island to another and thus bears a substantial relationship to traditional maritime activity.

Because both the locality and connection tests are satisfied, this Court has admiralty jurisdiction over this action. Removal was therefore proper on that basis alone, as the Court has original jurisdiction over this action. 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which

the district courts of the United States have original

jurisdiction, may be removed.").

     For the foregoing reasons, Illinois Plaintiffs' Motion to

Remand should be denied.

     An appropriate Order shall issue.




                             CLAUDE M. HILTON
                             UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
August 25, 2023

13